**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**ZURI WASHINGTON,**

                              **Plaintiff,**

              **-against-**

**NETWORKS PRESENTATIONS, et al.,**

                              **Defendants.**

---

**1:24-cv-00299 (ALC)**

**OPINION & ORDER**

---

**ANDREW L. CARTER, JR., United States District Judge**

Plaintiff Zuri Washington ( "Plaintiff" or "Washington") filed a civil complaint alleging racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), the New York State Human Rights Law, N.Y. Exec. Law § 296, *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, *et seq.* ("NYCHRL"). This complaint was brought against Defendants NETworks Presentations, LLC ("NETworks"), 1776 Touring LLC ("1776 Touring"), National Artists Management Company, Inc. ("NAMCO"), and Gentry & Associates, Inc. ("Gentry") (together "Corporate Defendants"), and Trinity Wheeler, Gregory Vanderploeg, Madeline McCluskey, and Katie Cortez (together "Individual Defendants," and with Corporate Defendants, "Defendants"). ECF No. 51 ("AC").[1] Washington alleges that she was subject to discriminatory treatment by the Individual Defendants and was unreasonably terminated in retaliation for concerns she raised about the alleged discrimination. *Id.*

---

[1] On April 19, 2024, Plaintiff filed her amended complaint. ECF No. 32. This filing was deficient, and Plaintiff refiled the amended complaint on December 6, 2024. ECF No. 51. Defendants moved to dismiss the amended complaint, and their motion, briefing, and responsive briefing all referenced the deficient amended complaint at ECF No. 32. Therefore, this opinion still pertains to the amended complaint, even though it was formally filed after the instant motion.

On May 17, 2024, Defendants filed a motion to dismiss the amended complaint. ECF No. 38. In their opening brief, Defendants argue that this Court does not have personal jurisdiction over Defendants. ECF No. 40. They additionally argue that, even if this Court does have personal jurisdiction over them, Plaintiff fails to state a claim and that the Southern District of New York in an improper venue. *Id*. Defendants move to dismiss the complaint or, at minimum, to transfer it to the District of Maryland. *Id*. For the reasons set forth below, the motion is **GRANTED**.

## BACKGROUND

### I.    Factual History

Plaintiff is a Black woman who works as a classically trained actor. AC ¶ 6. In December of 2022, she was hired to play a role in the production of *1776* ("the Show")—a musical about the United States' founding. She signed her contract to join the production in New York, where she auditioned and was cast. AC ¶ 86. The show originally debuted in 1969, but this modern rendition aimed to tell this story through a new lens, by "exclusively starr[ing] multi-racial actors who identify as female, nonbinary, and/or transgender — groups that were shut out from and never considered during the drafting of the Declaration of Independence — as opposed to a cast historically of white men." AC ¶ 2.

The Show was produced by Defendant NETworks, a large company that has produced several touring Broadway shows. ECF No. 40. The company was also the party responsible for establishing Defendant 1776 Touring as the employer agency for the Show. AC ¶¶ 55, 71. As the employer agency, 1776 Touring entered into contracts with the Show's employees and paid cast members' wages. *Id.* NETworks' and 1776 Touring's principal places of business are in Maryland. AC ¶¶ 47, 49. Defendant Gentry is the corporation which served as the general manager for the Show, according to an agreement with NETworks. Gentry's principle place of business is in

Maryland. AC ¶¶ 55, 71. Defendant NAMCO is an entertainment production company with its principal place of business in New York. *Id.* ¶ 51. NAMCO is listed as a producer of *1776* and a member of the Broadway League—a collective bargaining unit representing Broadway show producers. *Id.* ¶ 79. The Individual Defendants—Trinity Wheeler, Gregory Vander Ploeg, Madeline McCluskey, and Katie Cortez—are all domiciled in either South Carolina, Texas, or Maryland. ECF No. 40 at 3.

Before the show was brought to consumers, a period of rehearsals took place in Utica, New York. During this time, Plaintiff made a request for more information about what her hair plan for the Show would be given particular care needs her hair required. AC ¶¶ 11–16. The plan for Washington's hair—including choices around styling, use of a wig, etc.—was solely under the discretion of 1776 Touring, as specified by their employment agreement. *See* ECF No. 39-1 ¶ 17. In December of 2022, while in New York City, Plaintiff had a consultation with the Show's Associate Hair Designer, and Plaintiff further inquired about what the plan for her hair would be. ECF No. 40 at 4. Washington requested to wear either a wig or a braided protective style to ensure her hair remained healthy while on tour. *Id.* She repeatedly made such requests during the rehearsal period in Utica. AC ¶¶ 93–103. Despite her requests, Washington was not informed of her hair plan for four months. *Id.* Plaintiff alleges that other Black actors were similarly left without guidance as to their hair plans, while white actors were provided with wigs on demand. AC ¶ 12. Plaintiff argues that this differential treatment was racially discriminatory against her as a Black woman.

Plaintiff further alleges Defendants discriminated against her during a separate incident. After Washington expressed frustration at a meeting in Philadelphia concerning the Show's handling of a COVID-19 infection, Defendant Madeline McCluskey, the Show's acting General

3

Manager, notified Washington's agent about Plaintiff's "unruly behavior." *Id.* ¶ 19. Washington's agent was the only agent called about this meeting, even though multiple other cast members expressed their agitation with production. *Id.* ¶ 21; *see also id.* ¶¶ 118–121. Considered along with the unresponsiveness regarding Black cast members' hair plans, Plaintiff furthers suspect her race played a part in her agent's notification. *Id.* ¶ 25.

While Plaintiff was on tour in Denver, she met with the Show's Human Resources (HR) representative—who was in Maryland—via videoconference to express her concerns about the production team, particularly regarding what the alleged racial discrimination. *Id.* ¶ 27. In a second meeting, the HR representative relayed to Washington that the production team would not apologize for their action and explained her option to file a discrimination complaint. ECF No. 40 at 7. Washington became agitated, stating, "I'll take these fuckers down that way if I have to. I've taken bigger fuckers down before and I'll do it again. So yes, I will be filing an official complaint with HR." AC ¶ 150.

Afterwards, HR relayed this conversation to the production team, who discussed the events in Maryland. March 24, 2023, two hours after meeting with HR, Plaintiff was terminated. *Id.* ¶ 152. She subsequently received an official letter of termination citing "aggressive, uncontrolled behavior and threatening statements," as the basis of her termination. *Id.* ¶ 153. Plaintiff alleges that this termination is evidence of her disparate treatment and retaliation for her planned discrimination complaint. *Id.* ¶¶ 36–37. Defendants argue the termination was justified because of Plaintiff's behavior in the COVID-19 meeting and meetings with HR. ECF No. 40 at 19–20.

## II.    Procedural History

On January 16, 2024, Plaintiff filed a complaint against Defendants seeking compensatory damages for mental, emotional, and physical pain and suffering, punitive damages, compensation

for lost wages and benefits, and attorneys' fees and expenses. *See generally* AC at 34. Plaintiff also seeks declaratory relief stating that Defendants violated Title VII, Section 1981, the NYSHRL, and the NYCHRL. *Id*. Plaintiff filed an amended complaint on April 19, 2024, which was deficient and was refiled on December 6, 2024. ECF Nos. 32, 51.

On May 17, 2024, Defendants filed a motion to dismiss the amended complaint, or, alternatively, to transfer the case. ECF No. 40. Defendants argue that the Court does not have personal jurisdiction over them. ECF No. 41. They also assert that Plaintiff fails to state a claim for discriminatory treatment and retaliatory termination. *Id*. Defendants additionally argue that NAMCO is not a proper party to the case because the complaint does not sufficiently allege NAMCO's joint employer status. *Id.* Last, Defendants argue that venue is improper, and the District of Maryland is a more appropriate forum. *Id*.

On June 14, 2024, Plaintiff filed a brief in opposition to Defendants' motion, asserting that the Court has personal jurisdiction over all Defendants. ECF No. 41. She further argued that her complaint states viable claims. *Id*. She finally argues that the venue is proper and that this District is the most convenient forum to adjudicate her claims. *Id*. On July 3, 2024, Defendants filed a reply. ECF No. 47.

## LEGAL STANDARDS

### I.    Federal Rule of Civil Procedure 12(b)(2)

When analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), courts in New York follow a two-step process. "First, a court will determine whether personal jurisdiction lies pursuant to New York's long-arm statute. . . . Second, a court must analyze whether personal jurisdiction comports with the basic requirements of due process." *A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 563 (E.D.N.Y. 2011) (internal

citations omitted). There are two ways that New York exercises personal jurisdiction over non-residents: "general jurisdiction pursuant to N.Y. CPLR § 301 . . . or specific jurisdiction pursuant to N.Y. CPRL § 302." *Id.*

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff must meet the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)). At the motion to dismiss stage, the court must construe the pleadings and any supporting materials in the light most favorable to the plaintiff, resolving any doubts in favor of jurisdiction. *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013). The court does not, however, draw "argumentative inferences" in plaintiff's favor, nor does it accept as true a legal conclusion couched as a factual allegation. *See Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992) (citing *Norton v. Larney*, 266 U.S. 511 (1925)). "Because a motion to dismiss for lack of personal jurisdiction is inherently a matter requiring the resolution of factual issues outside of the pleadings, all pertinent documentation submitted by the parties may be considered in deciding the motion." *Woods v. Pettine*, No. 13-cv-290 (PGG), 2014 WL 292363, at *1 (S.D.N.Y. Jan. 27, 2014) (internal quotations omitted).

## II.     Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotations omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663 (citing *Twombly*, 550 U.S. at 555). Indeed, deciding whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678–79 (quoting *Twombly*, 550 U.S. at 570).

## DISCUSSION

### I.    Personal Jurisdiction

This Court finds that Plaintiff has sufficiently pleaded general jurisdiction as to Defendant NAMCO and specific jurisdiction over the other Corporate Defendants regarding her hair plan related claims. Otherwise, she has insufficiently pleaded that this Court has personal jurisdiction over Defendants.

At the motion to dismiss stage, "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Robertson-Ceco*, 84 F.3d at 566. To assess whether a plaintiff has fulfilled that burden, courts conduct a two-step analysis. *Id.* at 567. First, the Court must decipher if personal jurisdiction is coherent with the State's general jurisdiction statute. In New York, the governing texts are the Civil Practice Law and Rules sections 301 (general jurisdiction statute) and

302(a) (long-arm statute). The Court then will evaluate whether the Court's exercise of personal jurisdiction is consistent with due process concerns. *Santos v. Medina*, No. 18 CIV. 02865, 2019 WL 1099806 at *2 (S.D.N.Y. Mar. 8, 2019) (citing *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010)). This second step only takes place if the Court has determined that the first has been satisfied; that is that personal jurisdiction comports with the State's general jurisdiction statute.

### a. General Jurisdiction

Plaintiff does not dispute that general jurisdiction is inapplicable to all non-NAMCO Defendants. *See* ECF No. 41 at 31. Defendants do not dispute that NAMCO is subject to New York courts' general jurisdiction. *See* ECF No. 40 at 9. The following analysis demonstrates that NAMCO is the only Defendant over which this Court has general personal jurisdiction.

### i. Statutory Basis Under New York's Civil Practice Law and Rules

In New York, general jurisdiction is governed by N.Y. CPLR § 301. Section 301 preserves the common law notion that "a court may exercise general jurisdiction over a nondomiciliary defendant if the defendant is engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction." *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 103 (S.D.N.Y. 2015) (citing *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990)). Such contacts sufficient to exercise general jurisdiction over defendants may be found if defendants are domiciled in New York, served with process in New York, or continuously and systematically do business in New York. *See Wells Fargo Bank Minnesota, N.A. v. ComputerTraining.Com, Inc.*, No. 04-CV-0982, 2004 WL 1555110, at *2–3 (S.D.N.Y. July 9, 2004). Defendants meeting these criteria are subject to New York courts' general jurisdiction no matter where the incident arises, or who the plaintiff is. *See Brown*

*v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016) ("General jurisdiction . . . permits a court to adjudicate any cause of action against the corporate defendant, wherever arising, and whoever the plaintiff."). In this case, none of the Corporate Defendants (except for NAMCO) are domiciled in New York. *See* AC at 8–10. Rather, their principal places of business are in Maryland. *Id.* Similarly, none of the Individual Defendants are domiciled in New York. *Id.* They are domiciled in either South Carolina, Texas, or Maryland. *Id.* Additionally no Defendant was served with process in New York. *See* ECF No. 40 at 8.

Regarding the Corporate Defendants, the Court turns to the question of whether they continuously and systematically do business in New York. General jurisdiction is only to be extended to a forum beyond this principal place of business in the "exceptional case." *In re Roman Cath. Diocese of Albany, New York, Inc.*, 745 F.3d 30, 39 (2d. Cir. 2014). Exceptional cases are found in instances when the corporation's contacts are "so substantial and of such a nature as to render the corporation at home in that state." *Daimler AG v. Bauman*, 571 U.S. at 139 n. 19 (2014). The Corporate Defendants' contacts with New York would not be considered to fit the common law understanding of an "exceptional case."

As *Daimler* states, "[a] corporation that operates in many places can scarcely be deemed at home in all of them. . . . Nothing in *International Shoe* and its progeny suggests that a particular quantum of local activity should give a State authority over a far larger quantum of . . . activity having no connection to any in-state activity." *Id.* at 139 n. 20 (internal quotations omitted). A national tour, by its nature, travels throughout the country to bring its product to audiences. This traversing through different parts of the country is not disputed regarding *1776*. For example, the show travelled to cities such as Denver and Philadelphia to perform. *See* ECF No. 40 at 10 ("Plaintiff was working [on the production] in Philadelphia or Denver."). But just like in *Daimler*,

simply because a product—in this case the Show—is brought to a variety of jurisdictions outside

of a corporation's principal place of business does not mean a corporation has substantial contacts

with the forum to make it at home. *See Daimler*, 571 U.S. at 139 n. 19. Therefore, the Court does

not have general jurisdiction over any defendant except for NAMCO.

### b. Specific Jurisdiction

In addition to general jurisdiction, a Court may have specific jurisdiction over a defendant.

*See A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 563 (E.D.N.Y.

2011). For the reasons stated below, this Court finds specific jurisdiction is present only as to

Washington's hair plan related claims against the Corporate Defendants.

Four forms of contact with a state can establish specific jurisdiction: (1) transacting

business within the state; (2) committing a tortious act within the state; (3) committing a tortious

act outside the state that causes injury to person within the state, provided certain conditions are

met, or (4) owning, using, or possessing real property within the state. *See* CPLR § 302(a)(1)-(4).

Plaintiff does not allege Defendants committed torts or owned real property within New York, so

only the first prong is relevant to the Court's analysis.

"To establish personal jurisdiction under CPLR § 302(a)(1), two requirements must be met:

(1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must

arise from that business activity." *Mason. v. Antioch Univ.*, No. 15CV5841SJFGRB, 2016 WL

2636257, at *7 (E.D.N.Y. May 5, 2016); *see also Mantello v. Hall*, 947 F. Supp. 92, 99 (S.D.N.Y.

1996). "Whether a defendant has transacted business in the state depends on consideration of

numerous factors, such as whether (a) the defendant has an ongoing relationship with a New York

corporation; (b) the contract was negotiated or executed in New York; (c) the contract contains a

New York choice-of-law clause; and (d) payments were to be made into New York or performance

10

was to be supervised from New York." *Worldwide Futgol Assocs., Inc. v. Event Ent., Inc.*, 983 F. Supp. 173, 176–77 (E.D.N.Y. 1997) (citing *Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)).

Plaintiff alleges that her auditions were held in New York, her "employment contract was offered to Plaintiff, negotiated, and agreed to in New York," the contract contains a New York choice of law provision, and that the show rehearsed and launched from New York. *See* ECF No. 41 at 31. Likewise, she alleges a business relationship between NAMCO, a New York corporation, and the other Defendants. *See* AC ¶ 71. This is sufficient to show Defendants transacted business in New York. *See JFP Touring, LLC v. Polk Theatre, Inc.*, No. 07-CV-3341(CM)(RLF), 2007 WL 2040585, at *9 (S.D.N.Y. July 12, 2007) (finding that a theater company transacted business in New York by engaging in contract negotiations over the rights to a Broadway production); *see also Courtroom Television Network v. Focus Media, Inc.*, 695 N.Y.S.2d 17, 19–20 (1st Dep't 1999) ("A non-domiciliary which takes advantage of New York's unique resources in the entertainment industry has purposefully availed itself of the benefits of conducting business in the State."); *Deutsche Bank Sec. Inc. v. Montana Rd. of Invs.*, 797 N.Y.S.2d 439, 443 (1st Dep't 2005) (holding personal jurisdiction existed over non-domiciliary defendant in part because defendant "initiated negotiations" with a New York plaintiff).

To satisfy the second prong of § 302(a)(1) analysis, Plaintiff must still show that there is a substantial relationship between any business transactions and her causes of action. As "[s]pecific personal jurisdiction is claim specific," the Court will analyze the relationship between these transactions and the discriminatory conduct Plaintiff alleges: her hair plan, the reaction to the COVID-19 meeting, and her termination. *See D'Anzieri v. Harrison Glob. LLC*, No. 21-CV-8506 (VEC), 2022 WL 17404254, at *4 (S.D.N.Y. Dec. 2, 2022)

i.   *The Court Has Personal Jurisdiction Over the Hair Plan Related Claims Against NETworks, 1776 Touring, and Gentry*

To establish specific jurisdiction, there must be a substantial relationship between a plaintiff's employment discrimination claims and a defendant's transactions in New York. *Beeney v. InSightec, Inc.*, No. 13-CV-8022, 2014 WL 3610941, at *3 (S.D.N.Y. July 7, 2014). New York's long-arm statute and due process require that defendants' contacts with New York have some connection to plaintiff's discrimination claim. *See Chloe v. Queen Bee of Beverly Hills*, 616 F.3d 158, 166 (2d Cir. 2010). Courts in this circuit have consistently held no nexus is established when the alleged discriminatory conduct was not directed at the plaintiff in New York. *See Beeney*, 2014 WL 3610941 at *3 (S.D.N.Y. July 7, 2014); *see also Merrit v. Airbus Americas, Inc.*, 202 F. Supp. 3d 294, 299 (S.D.N.Y. 2016); *Russo v. System Integrators Inc.*, No. 2:17-cv-4317 (DRH)(AYS), 2018 WL 4100493, at *4 (E.D.N.Y. Aug. 28, 2018).

In the case of Plaintiff's hair plan, there is a sufficient nexus between Defendants' business transactions and her cause of action. Plaintiff alleges that while in Utica, she was subjected to discriminatory treatment by the show's production team. *See* AC ¶¶ 90, 99, 102–03, 109–10. The only Defendant mentioned by name in these allegations is Defendant McCluskey. *Id.* ¶ 103.

As to Defendant McCluskey, the only relevant conduct she is alleged to have committed regarding Plaintiff's hair plan is a conversation with Plaintiff's agent. *Id.* ("That evening, in what was meant to be a tech rehearsal, Ms. Washington wore a wig cap. At the same time, her agent and Ms. McCluskey spoke about a hair plan for Plaintiff."). Plaintiff does not allege that Defendant McCluskey committed any discriminatory conduct against her related to the hair plan. Therefore, the Court lacks specific personal jurisdiction over the hair plan related claims against Defendant McCluskey, along with the other individual Defendants.

Defendants do not contest whether the amended complaint states the Corporate Defendants' responsibility for the allegedly discriminatory conduct related to the Plaintiff's hair plan. *See* ECF No. 40 at 10. Their briefing only argues that there is no substantial nexus between their business transactions and the discriminatory conduct, so the Court will move to this question as well.

"Courts have repeatedly found that discrimination claims arise from an out-of-state defendant's business in New York when the defendant knowingly 'supervise[s] or communicate[s] with an employee working . . . from New York,' and the defendant's communications to the employee 'allegedly constitute[] acts of discrimination.'" *D'Anzieri*, 2022 WL 17404254, at *4 (quoting *Kumar v. Opera Sols. OPCO, LLC*, No. 20-CV-6824 (GHW), 2021 WL 4442832, at *8 (S.D.N.Y. Sept. 28, 2021)). Here, the delayed communication from the production team about Plaintiff's hair plan allegedly constitutes discrimination, which is related to the Show's rehearsals and first show in Utica. Allegedly, Plaintiff was forced to miss breaks and give up her evening between tech rehearsals just to have her hair styled for the first performance. *See* AC ¶¶ 107, 110–11. This constitutes a substantial nexus between the Corporate Defendants' business transactions and Plaintiff's hair plan claims, sufficient to establish personal jurisdiction.

Exercising specific personal jurisdiction over the Corporate Defendants also comports with due process. The Second Circuit has stated that "[i]t would be unusual, indeed, if a defendant transacted business in New York and the claim asserted arose from that business activity within the meaning of section 302(a)(1), and yet . . . the defendant cannot be found to have 'purposefully availed itself'" of the forum state within the meaning of due process. *Licci ex rel. Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 170 (2d Cir. 2013). Because the Corporate Defendants have not argued that the exercise of personal jurisdiction would be otherwise unreasonable, exercising

specific personal jurisdiction with respect to Plaintiff's hair plan related claims satisfies due process. *See D'Anzieri*, 2022 WL 17404254, at *5 (finding personal jurisdiction proper under due process where the defendant failed to address the reasonableness prong); *Richardson v. Nat'l R.R. Passenger Corp.*, No. 21-CV-09202 (VEC), 2022 WL 3701492, at *4 (S.D.N.Y. Aug. 26, 2022) (same).

Therefore the Court has personal jurisdiction over Defendants NETworks, 1776 Touring, and Gentry regarding Plaintiff's hair plan related claims.

ii.   *The Court Lacks Personal Jurisdiction Over the COVID-19 Meeting Related Claims*

The COVID-19 meeting and subsequent phone call took place in Philadelphia and were not "directed at New York." *See Beeney*, 2014 WL 3610941 at *3. Plaintiff fails to allege that there was any connection between Defendants' conduct in New York and these events. Plaintiff argues that the fact that her agent was in New York when he received that call creates a substantial nexus. *See* ECF No. 41 at 22. This argument is unavailing as the conduct in New York must be more than coincidence. *See D'Anzieri*, 2022 WL 17404254, at *5 (citing *Kerman v. InterContinental Hotels Grp. Res. LLC*, No. 20-CV-1085 (PKC) (PK), 2021 WL 930253, at *4 (E.D.N.Y. Mar. 11, 2021)). Accordingly, the Court lacks personal jurisdiction over Defendants as to claims arising out of the COVID-19 meeting in Philadelphia.

iii.   *The Court Lacks Personal Jurisdiction Over the Termination Claims*

Plaintiff asserts that her termination bears a substantial nexus to her employment contract, which was negotiated in New York. The Court disagrees. Plaintiff's employment agreement has nothing to do with the alleged discriminatory treatment and the fact that her firing served to terminate the employment contract negotiated in New York is insufficient to establish that any alleged discriminatory or retaliatory act is related to her contract's formation. In previously

14

employment discrimination cases, courts have looked to whether defendants selected the forum where they fired the plaintiff, whether the defendant and plaintiff were in separate locations when the defendant made the termination decision, and, if so, whether defendant was still transacting business in the forum when the decision was made elsewhere. *See Launer v. Buena Vista Winery, Inc.*, 916 F. Supp. 204, 210 (E.D.N.Y. 1996).

Applying this here, Plaintiff's claims arising from her termination took place while Defendants were out-of-state and seemingly no longer transacting business with New York. *See* AC ¶¶ 152–53. Given that the alleged adverse treatment does not arise from any action that is substantially related to Defendants' business in New York (but rather involve conversations that happened in Denver, with Defendants' representatives in Maryland), the Court finds it does not have specific personal jurisdiction over Defendants as to the Plaintiff's termination related claims.

### c. Individual Defendants

Plaintiff argues that the Individual Defendants should be subject to the Court's jurisdiction because a condition in her employment agreement specifies that the contract terms are binding on various people, including the Individual Defendants. *See* AC at 32–33 (citing Ex. 3 ¶ 7). This argument is unpersuasive given the fact that it hinges on the extent to which the contract connects Defendants to this jurisdiction. *See* ECF No. 41 at 31 (arguing that her "termination-related claims are direct[ly] tied to her employment contract"). As the Court finds the contract non-dispositive of jurisdiction over the Corporate Defendants, it cannot be used to bootstrap additional jurisdiction over the Individual Defendants.

Thus the Court **GRANTS** in part the Defendants' motion to dismiss for lack of personal jurisdiction. The Court **DENIES** the motion as to all claims against NAMCO and the Plaintiff's hair plan related claims against the other Corporate Defendants.

## II.    Venue

This Court finds that venue in the Southern District of New York is improper. "The legal standard for a motion to dismiss for improper venue is the same as a motion to dismiss for lack of personal jurisdiction." *Casville Invs., Ltd. v. Kates*, 12 Civ. 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005)). Although the court will view all facts in the light most favorable to the plaintiff, "[w]hen a defendant challenges either the jurisdiction or venue of the court, the plaintiff bears the burden of showing that both are proper." *Id.* (citing *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001); *Savoy Senior Hous. Corp. v. TRBC Ministries*, 401 B.R. 589, 596 (S.D.N.Y. 2009)). To meet this burden, the plaintiff must plead facts sufficient for a *prima facie* showing of venue. *See Glasbrenner*, 417 F.3d at 355 (citing *CutCo Indus. v. Naughton*, 806 F.2d 361, 364–65 (2d Cir. 1986)).

Under 28 U.S.C. § 1391(b), venue is proper in the chosen forum if: (1) at least one defendant resides in the district and all the defendants reside in the same state in which the district is located; (2) a "substantial part" of the events giving rise to the claim occurred in the district; or (3) the defendant is subject to personal jurisdiction in the district and "there is no district in which an action may otherwise be brought." 28 U.S.C. § 1391(b). In other words, "for venue to be proper, significant events or omissions material to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Glasbrenner*, 417 F.3d at 357.

Defendants move to dismiss Plaintiff's action for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) or, if that motion was denied, to alternatively transfer this matter to the District of Maryland. The Court will address the motion to dismiss and then the motion to transfer.

16

### a. Motion to Dismiss for Improper Venue

Plaintiff argues that this Court is the proper venue under all three prongs of 28 U.S.C. §

1391(b). *See* AC ¶ 41; ECF No. 41 at 33–34. In fact, under all three, it is clear that this Court is an

improper venue.

#### i. Residence

Plaintiff argues that the residency requirement is met because Defendant NAMCO resides

in New York. *See* AC ¶ 41. For venue to lie based on defendants' residence, all defendants must

be residents of the State in which the district is located. *See* 28 U.S.C. § 1391(b)(1). Defendant

NAMCO, with its principal place of business in this state, is the only resident of New York.

Therefore venue is not proper based on residence.

#### ii. Substantial Part

To argue that a substantial portion of the events occurred in the Southern District, Plaintiff

highlights her agent's participation in the events from Manhattan, her contract signing in

Manhattan, and her Union Representative joining virtual meetings from Manhattan. *See* ECF No.

41 at 33–34. The Second Circuit has "caution[ed] district courts to take seriously the adjective

'substantial.'" *Glasbrenner*, 417 F.3d at 357. Indeed, district courts are "required to construe the

venue statute strictly," and find venue proper only if "significant events or omissions material to

the plaintiff's claim . . . occurred in the district." *Id.* (noting that "[i]t would be error, for instance,

to treat the venue statute's 'substantial part' test as mirroring the minimum contacts test employed

in personal jurisdiction inquiries"); *see also Jones v. Fox Rothschild LLP*, No. 19 CIV. 11573

(AKH), 2020 WL 2521328, at *1 (S.D.N.Y. May 18, 2020). "[W]hen a plaintiff relies on §

1391(b)(2) to defeat a venue challenge, a two-part inquiry is appropriate. First, a court should

identify the nature of the claims and the acts or omissions that the plaintiff alleges gave rise to

those claims. Second, the court should determine whether a substantial part of those acts or omissions occurred in the [chosen] district." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005).

On the communications and participation of Plaintiff's agent and union representative, although they were located in the Southern District during the relevant events, the events themselves occurred outside of it. When the relevant acts took place Plaintiff was in Utica (Plaintiff's hair-related claims), Philadelphia (the COVID-19 meeting and communication with her agent), and Denver (the HR meeting and termination). Even if these events involved or implicated individuals who were in New York, those interactions do not form a "substantial part" of those acts. *See Daniel*, 428 F.3d at 432.

Plaintiff's argument pertaining to her contract is similarly unavailing. Where an employment contract is formed and signed in the Southern District but largely performed outside of it, venue is not proper under § 1391(b)(2). *See Medicrea USA, Inc. v. K2M Spine, Inc.*, No. 17 CIV. 8677 (AT), 2018 WL 3407702, at *16 (S.D.N.Y. Feb. 7, 2018). Here, the contract was largely performed outside of the District, since only auditions and three weeks of rehearsals took place within New York City. Therefore venue is not proper based on § 1391(b)(2).

### iii.  *Personal Jurisdiction*

Plaintiff argues that venue is proper based on the statute's fall-back provision, § 1391(b)(3). Critically, Defendants argue that this case should be transferred to the District of Maryland, as the residence of some Corporate Defendants and the location where Defendants decided to terminate Plaintiff. *See* ECF No. 40 at 28–30. Therefore, there is another judicial district in which venue is proper. Venue in the Southern District of New York is not proper under any prong of  28 U.S.C. § 1391(b).

18

### b. Motion to Transfer

Having determined that venue is improper in the Southern District of New York, the Court must determine whether, pursuant to 28 U.S.C. § 1406(a), it should dismiss the action or transfer it to the District of Maryland. *See Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993) ("Whether dismissal or transfer is appropriate lies within the sound discretion of the district court."). Defendants only moved to transfer as an alternative, if the Court found venue was proper, that it had personal jurisdiction over Defendants, and that Plaintiff had stated a claim. This Court found that venue is improper and that it lacks personal jurisdiction over the Defendants except for NETworks, 1776 Touring, and Gentry regarding Plaintiff's hair plan related claims. *See supra* I.

Additionally, Plaintiff opposes the transfer and argues that it would unduly burden her, counteracting any interest of justice. *See* ECF No. 41 at 34–35. Therefore, the Court **GRANTS** the motion to dismiss pursuant to Rule 12(b)(3) and declines to transfer this action to the District of Maryland.

## III.    Failure to State a Claim

Defendants also argue that dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6). "As the Court has determined that dismissal of this action is warranted due to improper venue and the remaining issues go to the merits of the case, the Court declines to consider Defendants' remaining arguments under Rule 12(b)(6)." *Molokotos-Liederman v. Molokotos*, No. 23 CIV. 1654 (VM), 2023 WL 5977655, at *19 (S.D.N.Y. Sept. 14, 2023). The motion to dismiss for failure to state a claim is **DENIED** without prejudice.

## IV.    Leave to Amend

The Court considers whether to grant Plaintiff leave to amend her complaint. Federal Rule of Civil Procedure 15(a)(2) provides that a court should freely give leave to amend "when justice

so requires." Fed. R. Civ. P. 15(a)(2); s*ee also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). That said, it remains "within the sound discretion of the district court to grant or deny leave to amend." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019). Leave may be denied where a plaintiff does not request to amend her pleading. *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (observing that "no court can be said to have erred in failing to grant a request that was not made"); *see also Morey v. Windsong Radiology Grp., P.C.*, 794 F. App'x 30, 34 (2d Cir. 2019) (summary order) (holding that "the district court did not abuse its discretion in declining to *sua sponte* allow [plaintiff] leave to file an amended complaint"). Further, leave may be denied where amendment would be futile. *See Olson v. Major League Baseball*, 447 F. Supp. 3d 174, 177 (S.D.N.Y. 2020).

Although Washington has not requested leave to amend nor "identified any amendments that would alter the Court's analysis," it is plausible that additions to her complaint could establish a *prima facie* showing of venue. *Bellocchio v. Garland*, 614 F. Supp. 3d 11, 20 (S.D.N.Y. 2022); *see also Glob. Tech Indus. Grp. Inc. v. Wells*, No. 21 CIV. 06891 (ER), 2022 WL 2872298, at *6 (S.D.N.Y. July 21, 2022). Accordingly, the Court grants her 30 days to amend her complaint in light of opinion.

## CONCLUSION

For the reasons set forth above, the Defendants' motion to dismiss is hereby **GRANTED**. Specifically the motion to dismiss for improper venue is **GRANTED**. The motion to dismiss for lack of personal jurisdiction is **DENIED** as to Defendant NAMCO and Plaintiff's hair plan related claims against Defendants NETworks, 1776 Touring, and Gentry, but otherwise **GRANTED**. The motion to dismiss for failure to state a claim is **DENIED** without prejudice.

Plaintiff is hereby **GRANTED** leave to file another amended complaint **on or before April 30, 2025**. The Clerk of Court is respectfully directed to terminate the pending motions at ECF No. 38.


**SO ORDERED.**

**Dated:  March 31, 2025**
      **New York, New York**

                                          **ANDREW L. CARTER, JR.**
                                          **United States District Judge**